USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31//0

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x
                                 :

HENRY WILLIAMS et al.,
                                 :      07 Civ. 119 (TPG)

            Plaintiffs,      :

            – against –      :      **OPINION**

GREGORY WILLIAMS et al.,      :

            Defendants.      :
------------------------------------------- x

        This is an action brought by students and alumni of the City
College of New York ("City College") in response to the removal of a sign
above the door to an on-campus student center purporting to name the
center for two City College alumni, each now a fugitive felon and accused
terrorist. Plaintiffs bring suit pursuant to the First and Fourteenth
Amendments to the United States Constitution and 42 U.S.C. § 1983.

        The amended complaint alleges five causes of action: (1)
viewpoint-based restriction on freedoms of expression and association;
(2) retaliation; (3) chilling of First Amendment rights; (4) violation of
equal protection; and (5) failure to properly supervise and train security
personnel. Plaintiffs seek preliminary and permanent injunctive relief,
declaratory judgment, damages, costs, and attorney fees.

        Defendants, the Chancellor of the City University of New York
("CUNY") and certain officers and employees of City College, now move
pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint in its

entirety for failure to state a claim.  In the alternative, defendants move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the claims of the alumni plaintiffs for lack of subject-matter jurisdiction due to lack of standing. Defendants also present a qualified immunity defense.

The motion to dismiss is denied.

## Jurisdiction and Venue

Jurisdiction is conferred by 28 U.S.C. § 1343(a), which provides for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. § 1983, and by 28 U.S.C. § 1331, which confers original jurisdiction to the federal district courts over all cases brought pursuant to the Constitution and laws of the United States.

Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims pleaded all occurred in the Southern District of New York.

## Background

The following facts are taken from the amended complaint and, for the purposes of this motion, are assumed to be true.

### I. The Parties

#### A. Plaintiffs

Plaintiff Henry Williams is a former member of the Board of Governors of the Guillermo Morales/Assata Shakur Community and Student Center ("the Community Center").  He received a Bachelor's

- 2 -

degree from City College and is presently a Ph.D. student at the CUNY
Graduate Center.

Plaintiff Rodolfo Leyton is a graduate student in the School of
Architecture at City College who serves as Director of the Community
Center. During the 2006-07 academic year he was an undergraduate at
City College.

Plaintiff Igwe Williams is a graduate student at City College. During
the 2006-07 academic year he was an undergraduate at City College.

Plaintiff Ydanis Rodriguez is a member of the Community Center
Board and an alumnus of City College. In 1990, he was a member of one
of the organizations that gave the Morales/Shakur Community Center its
name.

Plaintiff Mark Torres is an alumnus of City College and a former
member of the City College Student Services Corporation, Inc. ("the
SSC"), the body that in 1989 allocated room 3/201 for use as a
community center. He is currently taking post-graduate courses at
Lehman College, which is operated by CUNY.

B. Defendants

Defendant Matthew Goldstein is the Chancellor and Chief
Executive Officer of CUNY. CUNY is a public authority that operates over
twenty public colleges and graduate schools, including City College,
pursuant to Articles 125 and 126 of the New York State Education Law.

Defendant Gregory Williams is the President of City College.

Defendant Lois Cronholm was the Senior Vice President and Chief Operating Officer of City College at the time of the events giving rise to this action.

Defendant Ramona Brown was City College Acting Vice President for Student Affairs during the 2006-07 academic year.

Defendant Edward Diaz was City College Director of Public Safety in December 2006 and during the early months of 2007.

Defendant Douglas White is a CUNY peace officer supervisor stationed at City College.

Defendant Esther Peralez is the present Vice President for Student Affairs at City College who is sued in her official capacity only as the successor to former acting Vice President Ramona Brown pursuant to Fed. R. Civ. P. 25(d).

Defendant Pat Morena is the present City College Director of Public Safety who is sued in his official capacity only as the successor to former City College Public Safety Director Edward Diaz pursuant to Fed. R. Civ. P. 25(d).

Aside from Vice President Peralez and Mr. Morena, each defendant is sued in that defendant's official and personal capacities.

II. The Facts

Guillermo Morales was a Puerto Rican student at City College in 1969. Mr. Morales was among the students who organized a student strike to demand, among other things, increased admission of Black and

- 4 -

Puerto Rican students. As a result of agreements made with the striking students, the Board of Higher Education (the predecessor to the present CUNY Board of Trustees) adopted a resolution providing that every New York City high school graduate would be guaranteed admission to a CUNY college. As a result, Black and Latino students came to comprise the majority of the student body at City College. Morales was arrested and charged with bomb-making after he was seriously injured in an explosion in a Queens apartment in 1978. He escaped from police custody in 1979 and now lives in Cuba.

Assata Shakur is a former member of the Black Panther Party, which supported the student strikers at City College in 1969. Shakur herself attended City College in the 1970s. Several years afterwards, she was convicted of the murder of a state trooper following a shoot-out on the New Jersey Turnpike in which her husband was killed and she was wounded. She escaped from prison in 1979 and she too now lives in Cuba.

In the 1980s and 1990s, Students for Educational Rights ("S.E.R."), a coalition of students and community leaders organized against tuition hikes and budget cuts, established chapters at a number of CUNY campuses. During a 1989 strike organized to protest increased tuition and financial aid cuts, S.E.R. received permission to use room 3/201 of the City College North Academic Center (the "NAC" Building) for meeting and organizing. Pursuant to a negotiated agreement between

- 5 -

the striking students and the City College president, S.E.R. was formally granted permission to use 3/201 as a permanent meeting space on September 29, 1989.

In early 1990 the students who established this community center named it in honor of Guillermo Morales and Assata Shakur in order to "express their common commitment to social justice, educational opportunity, service to the community and self determination for, and unity of, Black and Latino students and communities," in the words of the verified amended complaint.  On February 14, 1990, these students erected a large sign above the door to the Community Center reading, in large block letters, "GUILLERMO MORALES/ASSATA SHAKUR COMMUNITY AND STUDENT CENTER."

By 2006, the Center was being used by a number of student groups, including S.E.R., the City College chapter of the Student Liberation Action Movement ("SLAM!"), and Dominicans 2000, among others (collectively, "the Organizations").  At that time, students and faculty at City College and other CUNY colleges were permitted to post signs, decorations, flyers, and literature containing political or other expressive messages on the doors and walls around the entrances to their offices without obtaining permission from college or university administrators.

On December 13, 2006, defendants removed the sign from above the door to the Community Center.  Plaintiffs allege that defendants

singled out this sign because they objected to the message they believed

was conveyed by naming the room for Morales and Shakur. Defendants

appear to have removed the sign in direct response to extensive critical

media coverage beginning with a prominent article and lead editorial

published in the New York Daily News on December 12, 2006. The Daily

News editorial stated that "by letting the sign remain, the administration

sanctions a shrine to killers," and urged CCNY to take down "the obscene

sign." Following this editorial, many other newspapers and television

and radio stations ran stories on the name of the Community Center and

defendants received hundreds of emails and letters, including some from

elected political officials, demanding that the sign be removed.

The same day the Daily News editorial was published, CUNY

Chancellor Matthew Goldstein published an open letter to City College

President Gregory Williams ordering Williams to have the sign removed

from the entrance to room 3/201. On the night of December 13, after

the Community Center closed, defendants removed the sign.

As authorization for this removal, defendants invoked a

resolution of New York City's Board of Higher Education ("the 1976

Resolution"). The 1976 Resolution provided that only the CUNY Board of

Trustees could officially designate a room on a CUNY campus in the

name of a person or entity. Plaintiffs argue that the 1976 Resolution is

inapplicable because the designation at issue here was never intended to

be official. Further, plaintiffs provide evidence that both prior to and

- 7 -

after December 2006 scores of rooms at CUNY colleges were designated in the name of persons or entities without the approval of the CUNY Board, but no other signs were removed. Plaintiffs allege that such selective invocation of the 1976 Resolution was a viewpoint-based response to negative publicity in the media.

On December 14, 2006, plaintiffs received a memorandum from City College Vice President for Student Affairs Ramona Brown warning that "if any students attempt to put the sign back up, they will be subject to disciplinary action." Plaintiffs called a meeting for December 15, 2006, at 7 p.m. to discuss their response. Starting at 6:30 that evening, dozens of CUNY security officers began deploying in the area around the Community Center and at the main entrance to the NAC Building. These security officers prevented non-students, who are normally permitted to enter the NAC Building, from entering to attend the meeting, yet they permitted non-students to enter for other purposes. Further, defendant Security Director Edward Diaz ordered that no more than 20 people be permitted in the Community Center at any one time, despite the fact that the room can legally accommodate 58. The security presence and limitation on the number of people permitted in the Community Center were repeated on December 20, 2006, following an outdoor rally on the City College campus. Plaintiffs argue that the intrusiveness and intimidation of the CUNY security officers violated the rights of plaintiffs

- 8 -

and other student and community members to freely associate in the Community Center for political purposes.

On February 8, 2007, New York City Council member Charles Barron called a press conference in the hallway outside room 3/201. At the press conference Mr. Barron and Reverend Luis Barrios taped a replica of the sign over the doorway to room 3/201. Later that night, defendants removed and confiscated the replica. A letter from Vice President Brown to plaintiffs Igwe Williams and Rodolfo Leyton dated February 8, 2007 accused Williams and Leyton of "violat[ing] the CUNY Board of Trustees policy regarding approval of signage," and warned that if they failed to immediately comply with this policy, "you and your student organizations are subject to disciplinary action."

On February 13, 2007, a second replica of the sign was hung over the entrance of room 3/201. That night the students working in the Community Center removed the sign when they closed the Center for the night. On February 15, 2007, Vice President Brown mailed letters to all of the student members of the groups that used the Community Center asserting that the groups had violated the CUNY Board of Trustees policy regarding signage and stating that every member of each group was "responsible for ensuring that any kind of signage indicating the name of the Morales/Shakur Center may not be put back up again . . . ."

Plaintiffs and other students who received this letter understood it to be a threat of suspension or expulsion if the sign were replaced,

- 9 -

even if they personally had nothing to do with it. Fear of such consequences led many members to dissociate themselves from these organizations, one of which, SLAM!, did not have enough students willing to sign the forms necessary to charter the group for the following academic year.

## Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).

In deciding such a motion, a court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

## Discussion

Plaintiffs contend that defendants violated their First Amendment right to free expression by removing the sign above the door to room 3/201. Plaintiffs also contend that defendants violated their freedom of association on December 15 and 20, 2006 by deploying excessive security at the front entrance to the NAC Building and in front of the door to room 3/201, and by limiting to twenty the number of people

permitted in 3/201.  Defendants deny these claims and also assert a
qualified immunity defense.

There is surely a serious question as to whether the students had
a Constitutional right to name the Community Center after two criminals
and to place a sign announcing this name above the door, thereby in
effect commemorating such criminals.  However, the court does not
believe the case should be decided on motion.  There are issues that
deserve a trial, both as to plaintiffs' First Amendment claims and
defendants' qualified immunity defense.

### Conclusion

For the reasons stated above, defendants' motion to dismiss is
denied.

SO ORDERED.

Dated:  New York, New York
        March 31, 2010

Thomas P. Griesa
U.S.D.J.